Argued and submitted September 9, 1981, affirmed May 12,
reconsideration denied June 24,
petition for review denied July 27, 1982 (293 Or 394)

## SODERBACK,
*Appellant,*

*v.*

## TOWNSEND et al,
*Defendants,*

## AMERICAN QUASAR PETROLEUM COMPANY OF NEW MEXICO, INC.,
*Respondent.*

(No. A7911-05713, CA A20503)

644 P2d 640

Kent Morris, Jr., Portland, argued the cause and filed the briefs for appellant.

Barry M. Mount, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff appeals from a summary judgment in favor of defendant American Quasar Petroleum Company (Quasar) in this action for damages arising out of an automobile accident. The issue is whether the trial court was correct in concluding that there was no genuine issue of material fact and that Quasar was entitled to a judgment as a matter of law. ORCP 47C. We review the record in the light most favorable to plaintiff, the party opposing the motion. *Forest Grove Brick v. Strickland,* 277 Or 81, 87, 559 P2d 502 (1977).

■    Defendant Townsend was retained by Quasar to negotiate gas leases. The accident occurred while Townsend was driving a rental car from St. Helens to Mist to check on some leases.[1] Plaintiff contends that Townsend was the agent of Quasar. Quasar contends that Townsend was an independent contractor.[2] In *Kowaleski v. Kowaleski,* 235 Or 454, 457-58, 385 P2d 611 (1963), quoting the comment to section 250 of the Restatement (Second) of Agency, the Supreme Court explained:

> " 'A principal employing another to achieve a result but not controlling or having the right to control the details of his physical movements is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relation of principal and agent there is added that right to control physical details as to the manner of performance

---

[1] Plaintiff commenced this action against Townsend and the rental car agency. Quasar was later added as a defendant on the theory that Townsend was Quasar's agent and that it was vicariously liable for his negligence. Plaintiff settled with Townsend and the rental agency, giving them covenants not to enforce judgment. ORS 18.455. The case then continued against Quasar, which moved for summary judgment.

[2] The general rule is that an employer of an independent contractor is not liable for the contractor's negligence. *Johnson v. Salem Title Co.,* 246 Or 409, 413, 425 P2d 519 (1967). Although we recognize that this rule has been under attack, *see, e.g., Peeples v. Kawasaki Heavy Indust., Ltd.,* 288 Or 143, 146-47, 154, 603 P2d 765 (1979); *Woody v., Waibel,* 276 Or 189, 192-93, 554 P2d 492 (1976), the Oregon Supreme Court has not abandoned it. The general rule is subject to many exceptions; however, none has been asserted here by plaintiff.

which is characteristic of the relation of master and servant that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor. * * * ' "

■      The distinction between an independent contractor and an employee has been stated as follows:

"An independent contractor, as distinguished from a mere employee, is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work * * *. " *Oregon Fisheries Co. v. Elmore Packing Co.,* 69 Or 340, 345, 138 P 862 (1914).

A person who employs an independent contractor directs the contractor to accomplish a result and in that sense exercises some control over the contractor, but that control alone will not convert the independent contractor into an employee. For an employer to be vicariously liable for the torts of his employee, he must have the right to control not only the result but also the manner and means of accomplishing the result. The *right* to exercise control is decisive. *See, e.g., Meskimen v. Larry Angell Salvage Company,* 286 Or 87, 91, 592 P2d 1014 (1979). Whether that right exists is determined by examining the employment arrangement.

■      In support of its motion for summary judgment, Quasar submitted affidavits describing in detail its employment arrangement with Townsend. Townsend had been in business for more than 26 years as an independent oil and gas broker. He was retained by various clients to negotiate and purchase leases. In April, 1979, he was retained by Quasar to negotiate gas leases in Oregon. He was told generally the areas in which Quasar was interested. Quasar placed maximum limits on Townsend's negotiating authority as to price and the duration of leases, but otherwise he was given a free hand. The manner and means by which he obtained leases were up to him. He set his own work schedule and had no quotas. He did not contract for any specific piece of work. He was paid a *per diem* of $175 plus expenses and accounted to Quasar at two-week intervals.

In addition to his own activities on behalf of Quasar, he searched titles on properties in the area being considered by other persons retained by Quasar, and leases negotiated by them would be forwarded by him to Quasar. While working for Quasar, Townsend could not buy leases for his own account or for others. His method of operation was to locate suitable land, search the title, contact the owners and negotiate a lease to be executed on a printed form. The owners would be paid and the lease recorded. Once the lease was forwarded to Quasar, it was bound on the terms and conditions negotiated, and Townsend had no further responsibility. Quasar treated Townsend as an independent contractor. No taxes or Social Security deductions were withheld from his compensation.

Quasar's employee Kerr, who had responsibility for overseeing Quasar's lease acquisitions, stated in his deposition that he knew that Townsend had rented a car, but that:

"American Quasar had no control over the broker's operation of the vehicle. Of course, he was told the specific land in which the company was interested and, as part of this work, he would have to go to that particular area. However, American Quasar had no right to tell Townsend when he would drive the car, how to drive it or what route he was to travel."

These facts are distinguishable from those found in *Knapp v. Standard Oil Co.,* 156 Or 564, 572, 68 P2d 1052 (1937), in which the court noted that:

"* * * the defendant company had the right to control the operation of the automobile by Hampton. It had the right to say: 'You will return to John Day by way of Baker and not by way of Long Creek,' and how and when the automobile should be operated by him when transacting its business."

Kerr also stated:

"When we retain these brokers, we are only interested in the ultimate result of their work—that is, the acquisition of these oil or gas leases. Though American Quasar obviously retains a general supervisory role in the particular project and has established certain overall standards and guidelines to work within, by and large the company does not retain the right or prerogative to govern or interfere with the details, manner and method of how the broker

accomplishes his task. It is implicit in our contract with individuals such as Townsend that they remain free to use their own skill, initiative and judgment in performing the details of the work without the interference of American Quasar."

Plaintiff's affidavits did not dispute the description of the employment relationship between Townsend and Quasar contained in Quasar's affidavits, nor do they contain any evidence that might support an inference that Quasar had the right to control the manner or means by which Townsend went about his work.[3] Plaintiff relied primarily on the affidavits of persons who Townsend had contacted and to whom Townsend had represented that he "worked for" Quasar. That Townsend may have represented himself as "working for" Quasar did not present any evidence to dispute Quasar's evidence on its lack of any right to control the means whereby Townsend accomplished his mission for Quasar.

In *Woody v. Waibel*, 276 Or 189, 192 n 3, 554 P2d 492 (1976), the Supreme Court stated:

"It is true that there may be questions concerning facts surrounding the arrangement between the parties which would be relevant in determining control. In this sense, the question is one for the trier of fact. However, where there is no dispute as to what the arrangement is, the question of employee or independent contractor status is one of law for the court."

Here, we cannot discern any disputed issue of fact concerning the right of Quasar to control the activities of Townsend.

Affirmed.

---

[3] "* * * When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of that party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue as to any material fact for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party." ORCP 47D.